**FILED**
FEB - 6 2007

CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| ALLIANCE COMMUNICATIONS COOPERATIVE, INC.; BERESFORD MUNICIPAL TELEPHONE COMPANY; KENNEBEC TELEPHONE COMPANY, INC.; McCOOK COOPERATIVE TELEPHONE COMPANY; SANTEL COMMUNICATIONS COOPERATIVE, INC.; and WEST RIVER COOPERATIVE TELEPHONE COMPANY, | CIV. 05-4181<br><br>MEMORANDUM OPINION AND ORDER REQUIRING BRIEFING |
| Plaintiffs, | |
| vs. | |
| WWC LICENSE, L.L.C., | |
| Defendant. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

The above-entitled action was removed by the Defendant, WWC License, L.L.C. (WWC) from State court. The Notice of Removal was never challenged by the Plaintiffs (Telephone Companies) and states that this Court has jurisdiction under 28 U.S.C. § 1331 because the Telephone Companies' action involves questions of federal law arising under the 1996 Telecommunications Act, and "specifically requires a determination of whether Plaintiffs may bill Defendant, a commercial mobile radio services operator licensed by the FCC, at rates other than those determined pursuant to an arbitration under 47 U.S.C. § 252(b)." WWC further states that this Court has diversity jurisdiction "as the amount in controversy may exceed $75,000." WWC further maintains that the claims of three of the Telephone Companies exceed $75,000 while the claims of the remaining three "may not involve the amount required by 28 U.S.C. §1332." WWC maintains that removal is nonetheless appropriate under the supplemental jurisdiction statute of 28 U.S.C. § 1367. For the reasons set forth in this memorandum opinion, this Court has serious concerns regarding the existence of subject matter jurisdiction, and is requiring the parties to brief this issue.

## DISCUSSION

Beginning in 2002, the Telephone Companies and WWC attempted to negotiate an interconnection agreement for the use of the Telephone Companies' service facilities by WWC. These negotiations were pursued in accordance with the Telecommunications Act of 1996, specifically 47 U.S.C. §§ 251 and 252. The Telephone Companies and WWC failed to reach an agreement and WWC filed a petition with the South Dakota Public Utilities Commission requesting an arbitration of the outstanding issues related to the interconnection of the services facilities. Before arbitration commenced, the parties entered into a Settlement Agreement dated March 1, 2003. In late 2003 and early 2004, the Telephone Companies and WWC negotiated and executed individual Reciprocal Interconnection, Transport and Termination Agreements (Interconnection Agreements). The Interconnection Agreements set forth the terms, conditions and rates for the interconnection of the parties' service facilities and the exchange of telecommunications traffic, including local traffic and InterMTA(major traffic area) traffic, between the Companies and WWC. Except for different reciprocal compensation rates, the terms of the Interconnection Agreements are identical for all of the Telephone Companies and WWC.

Section 7.2.3 of the Interconnection Agreements, which is the focus of this lawsuit, addresses how to proceed if the Telephone Companies and WWC are "unable to classify on an automated basis the traffic delivered by [WWC] as local traffic or interMTA traffic." Section 7.2.3 provides in part:

> For billing purposes, if either Party is unable to classify on an automated basis the traffic delivered by [WWC] as local traffic or interMTA traffic, a Percent InterMTA Use (PIU) factor will be used, which represents the estimated portion of interMTA traffic delivered by [WWC].
>
> The initial PIU factor to be applied to total minutes of use delivered by [WWC] shall be 3.0%. This factor shall be adjusted three months after the executed date of this Agreement and every six months thereafter during the term of this Agreement, based on a mutually agreed to traffic study analysis. Each of the Parties to this Agreement is obligated to proceed in good faith toward the development of a method of traffic study that will provide a reasonable measurement of terminated inter MTAtraffic.
>
> . . . .

2

The parties have not reached "a mutually agreed to traffic study analysis," and the PIU factor has never been readjusted. The Complaint in this action states causes of action for breach of contract, breach of covenant of good faith and fair dealing, specific performance, and declaratory judgment. All causes of action are based on the language of the Reciprocal Interconnection, Transport and Termination Agreements. The breach of contract cause of action is based on WWC's alleged failure and refusal to "negotiate in good faith" toward the development of a traffic study. 47 U.S.C.A. § 251(1) provides that each local exchange carrier has:

> The duty to negotiate in good faith in accordance with section 252 of this title the particular terms and conditions of agreements to fulfill the duties described in paragraphs (1) through (5) of subsection (b) of this section and this subsection. The requesting telecommunications carrier also has the duty to negotiate in good faith the terms and conditions of such agreements.

During the oral argument on the summary judgment motions this Court inquired of counsel for WWC whether the problem of the Interconnection Agreements could be resolved before the P.U.C. In addition to stating that neither party was seeking P.U.C. involvement, counsel contended that the entire agreement had been approved by the P.U.C. and the time for arbitration before the P.U.C. had passed before the parties were aware that they were unable to resolve the problem under Section 7.2.3. Although there is a time period to request arbitration under 47 U.S.C.A. § 252(b)(1), mediation under 47 U.S.C.A. § 252(a)(2) appears to have no comparable time limit. That provision states: "Any party negotiating an agreement under this section may, at any point in the negotiation, ask a State commission to participate in the negotiation and to mediate any differences arising in the course of the negotiation."

Given the procedures for negotiation, arbitration and approval involving the P.U.C., the Court believes there is a question of whether this Court has jurisdiction over the issues presented in this action when the P.U.C. apparently has not been involved in the resolution of Section 7.2.3. A number of courts have held that disputes over the interpretation of terms in Interconnection Agreements that have already been approved by state commissions must first be presented to state commissions before a federal court has subject matter jurisdiction over the claim. *See Contact*

3

*Communications v. Qwest Corp.*, 246 F.Supp.2d 1184 (D.Wyo. 2003); *Atlantic Alliance Telecommunications Inc. v. Bell Atlantic*, 2000 WL 34216867 (E.D.N.Y. April 19, 2000). Although neither party has raised the issue of subject matter jurisdiction, that issue may not be waived and must be considered by the Court *sua sponte* if need be. *See Boatmen's First Nat'l Bank of Kansas City v. Kansas Pub. Employees*, 57 F.3d 638, 640 (8th Cir. 1995). Accordingly,

IT IS HEREBY ORDERED that on or before February 27, 2007, WWC and the Telephone Companies submit simultaneous briefs addressing the issue of subject matter jurisdiction that was discussed in *Contact Communications v. Qwest Corp.*, 246 F.Supp.2d 1184 (D.Wyo. 2003), and *Atlantic Alliance Telecommunications Inc. v. Bell Atlantic*, 2000 WL 34216867(E.D.N.Y. April 19, 2000), and that the parties also address whether mediation of Section 7.2.3 before the P.U.C. is available to the parties under 47 U.S.C.A. § 252(a)(2) or elsewhere under the Telecommunications Act of 1996.

Dated this 6th day of February, 2007.

BY THE COURT:

*/s/ Lawrence L. Piersol*
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: *Sharon Fouro*
(SEAL)    DEPUTY

4