

FILED
MAR 29 2007
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| ALLIANCE COMMUNICATIONS COOPERATIVE, INC.; BERESFORD MUNICIPAL TELEPHONE COMPANY; KENNEBEC TELEPHONE COMPANY, INC.; McCOOK COOPERATIVE TELEPHONE COMPANY; SANTEL COMMUNICATIONS COOPERATIVE, INC.; and WEST RIVER COOPERATIVE TELEPHONE COMPANY, INC., | \* \* \* \* \* \* \* \* \* \* | CIV. 05-4181  MEMORANDUM OPINION AND ORDER RE: SUBJECT MATTER JURISDICTION |
| Plaintiffs, | \* \* | |
| vs. | \* \* | |
| WWC LICENSE, L.L.C., | \* \* | |
| Defendant. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs are rural telephone companies (Telephone Companies) authorized to provide local exchange service within their service areas as defined by the South Dakota Public Utilities Commission. The Telephone Companies provide wireline telephone and other services through wires to the homes and businesses of their customers. Defendant, WWC License, L.L.C. (WWC) is a Commercial Mobile Radio Service Provider licensed by the Federal Communications Commission. WWC provides wireless telephone services to its customers. Beginning in 2002, the Telephone Companies and WWC attempted to negotiate an interconnection agreement for the use of the Telephone Companies' service facilities by WWC. These negotiations were pursued in accordance with the Telecommunications Act of 1996, specifically 47 U.S.C. §§ 251 and 252.[1]

The Telephone Companies and WWC failed to reach an agreement and WWC filed a

---

[1] In the Telecommunications Act of 1996, Congress enacted a plan which effectively opens up local telephone service markets by imposing several new obligations on the existing providers of local telephone service in those markets. The Act places a duty on the incumbent local exchange carriers to privately negotiate, in good faith, comprehensive agreements with other telecommunication carriers seeking to enter the local market. *See Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 421-422 (8th Cir. 1996).

petition with the South Dakota Public Utilities Commission requesting an arbitration of the outstanding issues related to the interconnection of the services facilities. Before arbitration commenced, the parties entered into a Settlement Agreement dated March 1, 2003. In late 2003 and early 2004, the Telephone Companies and WWC negotiated and executed individual Reciprocal Interconnection, Transport and Termination Agreements (Interconnection Agreements). The Interconnection Agreements set forth the terms, conditions and rates for the interconnection of the parties' service facilities and the exchange of telecommunications traffic, including local traffic and InterMTA (major traffic area) traffic, between the Telephone Companies and WWC. Except for different reciprocal compensation rates, the terms of the Interconnection Agreements are identical for all of the Telephone Companies and WWC. Although the majority of the Interconnection Agreements were executed in 2004, the terms of the Interconnection Agreements apply retroactively to January 1, 2003.

Both local traffic[2] and interMTA traffic[3] are defined by the Interconnection Agreements. Local traffic originates and terminates within the same major traffic area (MTA). InterMTA traffic originates in one major traffic area and terminates in another major traffic area. Local traffic was to be billed and is billed at the rates set forth in the respective appendices to the Interconnection Agreements for the telephone companies. InterMTA traffic was to be billed at the telephone

---

[2]Local traffic is defined by the Interconnection Agreements as: (1) for wireless to wireline calling, traffic exchanged between the commercial mobile radio service provider and the telephone company that, at the beginning of the call, originates and terminates within the same major traffic area based on the location of the connecting cell site serving the originating wireless end use and the location of the end office serving the terminating wireline end user; and (2) for wireline to wireless calling, traffic exchanged between the telephone company and the commercial mobile radio service provider that originates in a telephone company exchange and terminates to a commercial mobile radio service provider NXX that has its rate center within the telephone company exchange or within the local calling area as set forth in an appendix to the agreement.

[3]InterMTA traffic is defined by the Interconnection Agreements as all wireless to wireline calls, which originate in one major traffic area and terminate in another major traffic area based on the location of the connecting cell site serving the wireless end user and the location of the end office serving the wireline end user.

companies' intrastate or interstate rates.[4]

Section 7.2.3 of the Interconnection Agreements addresses how to proceed if the telephone companies and WWC are "unable to classify on an automated basis the traffic delivered by [WWC] as local traffic or interMTA traffic." Section 7.2.3 provides in part:

> For billing purposes, if either Party is unable to classify on an automated basis the traffic delivered by [WWC] as local traffic or interMTA traffic, a Percent InterMTA Use (PIU) factor will be used, which represents the estimated portion of interMTA traffic delivered by [WWC].
>
> The initial PIU factor to be applied to total minutes of use delivered by [WWC]shall be 3.0%. This factor shall be adjusted three months after the executed date of this Agreement and every six months thereafter during the term of this Agreement, based on a mutually agreed to traffic study analysis. Each of the Parties to this Agreement is obligated to proceed in good faith toward the development of a method of traffic study that will provide a reasonable measurement of terminated inter MTAtraffic.
>
> . . . .

The parties have not reached "a mutually agreed to traffic study analysis," and the PIU factor has never been readjusted. On November 9, 2005, the Telephone Companies filed suit against WWC in Circuit Court, Third Judicial Circuit, Sanborn County, South Dakota, alleging causes of action for breach of contract, breach of the covenant of good faith and fair dealing, and specific performance. The Telephone Companies also sought a declaratory judgment pursuant to S.D.C.L. Ch. 21-24.. The Telephone Companies alleged that WWC breached the terms of the Interconnection Agreements by failing to negotiate in good faith toward the development of a traffic study for the measurement of the parties' interMTA traffic and by failing to adjust the initial PIU interMTA factor as contemplated by the specific terms of the Interconnection Agreements.

---

[4]The Interconnection Agreements provide at Section 2.1:
This agreement applies both to Local and to interMTA traffic originated by the End User subscribers of one Party and terminated to end-user subscribers of the other Party which is (a) delivered over facilities owned or controlled by the Parties, which directly interconnect the Parties or, (b) indirectly connected, i.e., delivered over a Third Party Provider's transiting facilities. Local Traffic is subject to local Transport and Termination charges as described in Appendix A. InterMTA Traffic is subject to Telephone Company's interstate or intrastate access charges.

3

On December 7, 2005, WWC filed a Notice of Removal with this Court. WWC answered the complaint and counterclaimed against the Telephone Companies, alleging that the Telephone Companies improperly billed interMTA traffic at inappropriate rates. WWC contends that the Interconnection Agreements do not set forth what rate should be applied to the interMTA traffic. WWC contends that the March 1, 2003, Settlement Agreement[5] is evidence of the agreement to use the interstate rate and of a term that was not incorporated within the Interconnection Agreements. The final Interconnection Agreements, however, make no specific reference to the March 1, 2003, Settlement Agreement.

When this action was removed by WWC from State court the Notice of Removal, which was not challenged by the Telephone Companies, states that this Court has jurisdiction under 28 U.S.C. § 1331 because the Telephone Companies' action involves questions of federal law arising under the 1996 Telecommunications Act, and "specifically requires a determination of whether Plaintiffs may bill Defendant, a commercial mobile radio services operator licensed by the FCC, at rates other than those determined pursuant to an arbitration under 47 U.S.C. § 252(b)." WWC further maintained that this Court has diversity jurisdiction "as the amount in controversy *may* exceed $75,000." WWC further maintains that the claims of three of the Telephone Companies exceed $75,000 while the claims of the remaining three "may not involve the amount required by 28 U.S.C. §1332." WWC maintains that removal is nonetheless appropriate under the supplemental jurisdiction statute of 28 U.S.C. § 1367.

Since this Court had serious concerns regarding the existence of subject matter jurisdiction, this Court issued an Order on February 6, 2007, that WWC and the Telephone Companies submit simultaneous briefs addressing the issue of subject matter jurisdiction that was discussed in *Contact Communications v. Qwest Corp.*, 246 F.Supp.2d 1184 (D.Wyo. 2003), and *Atlantic Alliance Telecomm. Inc. v. Bell Atlantic*, 2000 WL34216867(E.D.N.Y.April 19, 2000)(not reported in F.Supp.2d). The Court also requested that the parties address whether mediation of Section 7.2.3

---

[5]The March 1, 2003, Settlement Agreement contains the following paragraph:
> RTC may apply an InterMTA factor to Western Wireless mobile-to-land terminating minutes to derive usage that may be billed as interMTA traffic at RTC terminating interstate access rates. The factor is subject to adjustment based on mutually agreed traffic study analysis to be conducted by September 2003.

before the P.U.C. is available to the parties under 47 U.S.C.A. § 252(a)(2) or elsewhere under the Telecommunications Act of 1996.[6] The Court has received and reviewed the parties' briefs addressing the issue of subject matter jurisdiction.

## WHETHER THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THE ISSUES SURROUNDING SECTION 7.2.3 OF THE INTERCONNECTION AGREEMENTS ABSENT A PRIOR DETERMINATION OF THESE ISSUES BY THE SOUTH DAKOTA PUBLIC UTILITIES COMMISSION ?

The federal district courts lack plenary jurisdiction, and may only exercise jurisdiction where Congress sees fit to allow it. *See Southwestern Bell Tel. Co. v. Connect Communications Corp.*, 225 F.3d 942, 945 (8th Cir. 2000)(citing *Godfrey v. Pulitzer Publ'g Co.*, 161 F.3d 1137, 1141 (8th Cir.1998)). The Federal Communications Commission (FCC )interprets 47 U.S.C.A. § 252 of the Telecommunications Act to provide state utility regulatory commissions with both enforcement power and enforcement responsibility. *See Starpower Communications, LLC, No. FCC 00-216*, 2000 WL 767701, ¶¶ 5-6 (F.C.C. June 14, 2000) (opinion and order). This Court must defer to the FCC's view so long as it is a reasonable interpretation of an ambiguous statute. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984); *Southwestern Bell Tel.*, 225 F.3d at 946.

In *Southwestern Bell Tel. Co. v. Connect Communications Corp.*, 225 F.3d at 948, the Eighth Circuit Court of Appeals held that "consistent with the scheme of cooperative federalism embodied in the Telecommunications Act" the district courts have subject matter jurisdiction to review federal-law issues reached by state commissions in enforcement proceedings. The issue before this Court in this case is whether this Court has jurisdiction over an interconnection agreement dispute which has not been presented to the South Dakota Public Utilities Commission.

In *Contact Communications v. Qwest Corp.*, 246 F.Supp.2d 1184 (D.Wyo. 2003), the

---

[6]47 U.S.C.A. § 252(a)(2) provides:

> Any party negotiating an agreement under this section may, at any point in the negotiation, ask a State commission to participate in the negotiation and to mediate any differences arising in the course of the negotiation

5

plaintiff, a telephone market entrant, brought a diversity action against an incumbent local exchange carrier alleging that the local exchange carrier had breached the parties' interconnection agreements. The plaintiff in that case had not presented its claims to either the state commission or the FCC. The district court in *Contact Communications* construed the Telecommunications Act as limiting the jurisdiction of a federal district court to a case brought by a "party aggrieved" after seeking a determination then receiving an unfavorable determination by the state commission. 246 F.Supp.2d at 1188(citing 47 U.S.C. § 252(e)(6)).[7] The district court held that its jurisdiction under the Telecommunications Act did not change depending on whether the plaintiff characterized its claims under federal law as violations of the Telecommunications Act or as a state law claims. 246 F.Supp.2d at 1190.

In summarizing its conclusion that it had no subject matter jurisdiction, the district court in *Contact Communications* explained:

> The Courts have consistently held that "[t]he statutory scheme [of the TCA] does not permit [a federal district court] to review disputes arising out of interconnection agreements not previously subject to action by a state commission". *Indiana Bell Tel. Co., Inc. v. McCarty*, 30 F.Supp.2d [1100, 1104 (S.D.Ind. 1998)]. This Court finds that the [Telecommunications Act] is a comprehensive regulatory scheme that places the initial responsibility of resolving disputes with the [state commissions]. The assertion that this Court has initial jurisdiction pursuant to its diversity jurisdiction over such disputes is at odds with the cooperative federalism scheme created by Congress. In order to be ripe for review for this court, the plaintiff must be "aggrieved" by the state commission's determination. *AT&T Communications of Illinois, Inc. v. Illinois Bell Tel. Co.*, 1998 WL 525437, at *5. Circumventing the commission would jeopardize the entire system of review established by the Act. *Indiana Bell Tel. Co., Inc. v. McCarty*, 30 F.Supp.2d at 1104.

---

[7] 47 U.S.C. § 252(e)(6), " Review of State commission actions" provides:

> In a case in which a State fails to act as described in paragraph (5), the proceeding by the Commission under such paragraph and any judicial review of the Commission's actions shall be the exclusive remedies for a State commission's failure to act. In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section.

246 F.Supp.2d at 1191. *See also*, *Atlantic Alliance Telecomm. Inc. v. Bell Atlantic*, 2000 WL 34216867(E.D.N.Y.April 19, 2000)(not reported in F.Supp.2d); *Northern Arkansas Tel. Co., Inc. v. Cingular Wireless*, LLC, 2006 WL 2547400 (W.D.Ark.)(slip copy).

None of the parties have presented argument or authority to refute the holdings in the above cases that the Telecommunications Act makes only a limited grant of jurisdiction to the federal district courts to review only those disputes that have been first presented to the state utility regulatory commissions. This Court finds the reasoning in the above-cited authorities persuasive and concludes that the statutory scheme set forth in the Telecommunications Act makes the state utility regulatory commissions the initial decision-makers in disputes involving interconnection agreements. Accordingly,

IT IS HEREBY ORDERED that the above-entitled action is hereby dismissed without prejudice.

Dated this 29th day of March, 2007.

BY THE COURT:

*/s/ Lawrence L. Piersol*
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: *Shelly Margulies*
(SEAL)       DEPUTY